GEORGE M. WOLFF AND TRUMAN E. PHILLIPS, CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME OF WOLFF AND PHILLIPS, PETITIONERS *v.* EDWARD MACAULEY, ACTING CHAIRMAN, U. S. MARITIME COMMISSION, RESPONDENT.

Docket No. 498–R. Promulgated June 30, 1949.

*Donald O. Lincoln, Esq.*, for the petitioners.
*Harland F. Leathers, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: The respondent contends that this Court lacks jurisdiction and must therefore dismiss this proceeding. The same contention was made by respondent in connection with a motion to dismiss heretofore considered by this Court. This motion was denied in *George M. Wolff et al.* v. *Macauley*, 8 T. C. 146. For reasons stated therein, we hold that the petitioners are not subcontractors described in section 403 (a) (5) (B) of the Renegotiation Act, as amended, and that this Court has jurisdiction of the instant proceeding.

The only remaining issue is whether petitioners' excessive profits may be eliminated in an amount which will reduce petitioners' renegotiable income below $100,000.

Under the Renegotiation Act of 1942, as amended, the secretaries of the Departments were separately authorized to renegotiate contracts entered into by contractors with certain governmental agencies and all subcontracts connected with the contracts. There was no central authority vested with the power of renegotiation. This led to conflicting constructions of the same act by the different Depart-

ments. The Price Adjustment Board of the Navy Department construed the language of section 403 (c) (6) to mean that no determination of excessive profits to be eliminated should be made in an amount greater than that which, when deducted from the aggregate amount of gross receipts or accruals for the contractor's fiscal year under contracts with the Departments or subcontracts thereunder, would reduce them below $100,000. The United States Maritime Commission, however, adopted the view that this section did not prevent it from eliminating excessive profits below $100,000.

The pertinent provisions of section 403 of the Renegotiation Act of 1942, as amended, are the following:

SEC. 403 (a). For the purposes of this section—

\*      \*      \*      \*      \*      \*      \*

(4) The term "excessive profits" means *any amount* of a contract or subcontract price which is found as a result of renegotiation to represent excessive profits.

\*      \*      \*      \*      \*      \*      \*

SEC. 403 (c) (1) Whenever, in the opinion of the Secretary of a Department, the profits realized or likely to be realized from any contract with such Department, or from any subcontract thereunder \* \* \* may be excessive, the Secretary is authorized and directed to require the contractor or subcontractor to renegotiate the contract price. \* \* \*

\*      \*      \*      \*      \*      \*      \*

(6) This subsection (c) shall be applicable to all contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made \* \* \* unless \* \* \* (iii) the aggregate sales by and amounts payable to the contractor or subcontractor and all persons under the control of or controlling or under common control with the contractor or subcontractor, under contracts with the Departments and subcontracts thereunder \* \* \* do not exceed, or in the opinion of the Secretary will not exceed, $100,000 \* \* \*. [Italics supplied.]

From the above statutory provisions, it is apparent that excessive profits applies to "any amount" of profits which the renegotiation authority deems to be excessive. There is no statutory provision in any way eliminating any part of the profits from consideration after the renegotiating authority has legally assumed jurisdiction. Section 403 (c) (6) provides that there shall be no renegotiation of any contract unless the aggregate sales by, and the amount payable to, the contractor or subcontractor shall exceed $100,000. There is no provision in the renegotiation law whereby the renegotiating authority, after having once assumed jurisdiction, shall not have authority to declare profits to be excessive. as soon as the amount of those profits subtracted from the amount of aggregate sales or amount payable to the contractor or subcontractor shall equal $100,000. If it had been the intention of Congress to impose such an administrative limitation on the renegotiating authority, it would certainly appear that such an intention should have been expressed in the legislation itself.

In support of petitioners' contention that our determination of excessive profits under the act can not be sufficiently large to reduce the total amount received by petitioners below $100,000, we are cited to regulations of the War Contracts Price Adjustment Board issued for the fiscal year ended after June 30, 1943, and designated as paragraph 348.3, which reads as follows:

(2) No determination of excessive profits to be eliminated from the aggregate amount of gross receipts or accruals under contracts and subcontracts (other than subcontracts referred to in subsection (a) (5) (B) of the 1943 Act) shall be made in an amount greater than that which when deducted from the aggregate amount of such gross receipts or accruals for the contractor's fiscal year will reduce them below $500,000.

If we accept for the argument that this regulation applying to the 1943 Act should carry interpretative authority on a similar section of the 1942 Act, nevertheless, it seems evident that the regulation makes definite legislative provision which is not authorized by either the 1942 or the 1943 Renegotiation Act. Therefore, its provisions go beyond the authority of an administrative agency in that it writes substantive law.

Our attention is also directed to a statement on the floor of the United States Senate by Senator George, Chairman of the Senate Finance Committee at the time the conference report on the Revenue Act of 1943 was under consideration. This statement reads as follows:

We have received some complaints from contractors whose total contracts for the fiscal year aggregate slightly over $500,000. For example, a contractor might receive total amounts for his fiscal year aggregating $510,000. While this would make his contracts subject to renegotiation, *it is not intended that the renegotiation shall reduce such amounts received below $500,000, and, on inquiry, I find that that is the disposition of certain of the Departments charged with renegotiation.* [Italics supplied.]

It will be seen that the Senator was not discussing terms in the act of dubious meaning. He was setting forth what he evidently thought to be the provisions of the act, but if the reading of the act itself fails to disclose such provisions, the remarks of the Senator can not be accepted as establishing statutory provisions which are not included in the act.

In *Alfred S. Beeley,* 12 T. C. 61, this Court had before it the renegotiation of a contract under the 1943 Act and the contractor in that case contended that because of the $500,000 jurisdictional limitation set forth in the act he should be allowed profits on the initial $500,000 before being renegotiated on excessive profits in income received above that amount. This issue is very similar to the issue in the case at bar and the Court therein said:

We find no support for this theory either in the legislative history of the act or in the regulations which have been promulgated to govern its enforcement.

Petitioners having consented to the entry of an order fixing the excessive profits in an amount not to exceed $60,000, which was the amount determined by the respondent, we hold, therefore, that the amount of petitioners' excessive profits shall be fixed at $60,000 as determined by respondent.

Reviewed by the Court.

*An order will enter in accordance herewith.*

JOHNSON, *J.*, dissenting: Admitting, as they must, that petitioners' contention is supported by the statement of Senator George and paragraph 348.3 of the regulations of the War Contracts Price Adjustment Board, the majority hold that petitioners must refund the full $60,000, even though it reduces contract receipts below $100,000. They base this conclusion on Congress' failure to provide any limitation on the amount of excessive profits determinable in cases to which the renegotiation act applies. I agree that there is no limitation, but in my opinion, when a determined refund reduces a contractor's receipts to $100,000, it follows that "the aggregate sales by and amounts payable to the contractor * * * do not exceed * * * $100,000," and thereby the renegotiation provisions become inapplicable by the literal terms of section 403 (c) (6). The statute is certainly susceptible of this construction, and, to resolve doubts, Senator George's remarks and the administrative interpretation are entitled to consideration. It seems to me, moreover, that only such a construction insures an equitable application of the $100,000 limitation on contracts subject to renegotiation.

ARUNDELL, *J.*, agrees with this dissent.